UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


PRISCILLA VAN BLARCOM,

    Plaintiff,

v.                                             CASE NO: 8:05-cv-703-T-26TBM

VCA ANTECH, INC.,

    Defendant.
_____/

**O R D E R**

Before the Court is Defendant VCA Antech, Inc.'s Motion for Summary Judgment, Statement of Undisputed Facts, and supporting affidavits, depositions and exhibits (Dkts. 14, 15 & 16), Plaintiff's Response in Opposition with declarations (Dkts. 21, 22 & 24), and Defendant's Reply. (Dkt. 28). After careful consideration of the parties' submissions, the applicable law, and the entire file, the Court concludes that the Motion should be granted.

**This Action and the Parties**

Plaintiff Priscilla Van Blarcom brings this action against her former employer, Defendant VCA Antech, Inc. (VCA), for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Plaintiff, a white female, claims that she

was wrongfully terminated because she had a romantic relationship with a black male and that she was retaliated against when she complained about the discrimination.

VCA operates as an animal hospital in Tampa, and hired Plaintiff as a veterinarian technician on August 23, 2004. She was hired on a temporary, ninety-day probationary basis. In mid-October 2004, a relief veterinarian, Dr. Lipinski,[1] asked her why Plaintiff's parents would not help pay for her to attend veterinary school. (Dkt. 15, Van Blarcom depo. at 46). Plaintiff responded that her parents wanted to kill her because she was dating a black man. According to Plaintiff, Dr. Lipinski told her, "That's f—ing disgusting. I'd have tried to kill you, too." (Dkt. 15, Van Blarcom depo. at 46).

Plaintiff reported this incident to the hospital manager, Ashley Wilson.[2] (Dkt. 15, Wilson depo. at 25-26). According to Ms. Wilson, after Plaintiff told her about the incident with Dr. Lipinski, Ms. Wilson counseled Dr. Lipinski in person. (Dkt. 15, Wilson depo. at 29). Plaintiff admits that Dr. Lipinski later approached her and apologized for the comment. (Dkt. 15, Van Blarcom depo. at 57). According to Ms. Wilson, there were no more incidents. Plaintiff testified that Dr. Lipinski became bossy and arrogant toward everyone at the hospital after she was offered a job there. (Dkt. 15, Van Blarcom depo. at 42). Plaintiff concedes that Dr. Lipinski did not make any more

---

[1] Dr. Lipinski was not an employee of VCA.

[2] Ms. Wilson testified at deposition that she was in charge of hiring and firing, with the exception of the veterinarians. (Dkt. 15, Wilson depo. at 13 & 31-32).

comments regarding her dating a black man after the one incident.[3] (Dkt. 15, Van Blarcom depo. at 59).

Plaintiff habitually arrived late to work, sometimes hours late,—twenty-seven days out of the first ninety-day trial period.[4] Ms. Wilson verbally counseled Plaintiff more than once about her excessive tardiness. (Dkt. 15, Wilson depo. at 47-48). The employee handbook, which Plaintiff acknowledged receiving, states that employees may be disciplined for excessive absenteeism and tardiness. (Dkt. 15, Van Blarcom depo. at 29-31). Plaintiff testified that she was aware of the policy when she was working at VCA. (Dkt. 15, Van Blarcom depo. at 31). She admitted being late, but could not recall how often, maybe as much as once or twice a week. (Dkt. 15, Van Blarcom depo. at 33). She also acknowledged that Ms. Wilson had counseled her about her tardiness a couple of weeks before she was terminated. (Dkt. 15, Van Blarcom depo. at 38).

In October 2004, Plaintiff contacted veterinarians she had previously worked with to obtain advice on how to treat a particular animal. She claims the relief veterinarian on duty did not know how to treat the animal. (Dkt. 15, Wilson depo. at 39-40). Contacting

---

[3] Ms. Wilson knew that Plaintiff's boyfriend was black because she had taken trips to Busch Gardens with Plaintiff and her boyfriends' two children, who are both black. (Dkt. 15, Wilson depo. at 49-50; Van Blarcom depo. at 50-51).

[4] The time records attached to the affidavit of Susan Spear, the Regional Operations Director, support Plaintiff's repeated tardiness. (Dkt. 15, Spear aff.).

a non-VCA veterinarian for medical advice violates company policy. (Dkt. 15, Spear depo. at 60-61).

The final incident precipitating Plaintiff's termination occurred when Plaintiff called Ms. Wilson on Sunday, November 14, 2004, and left a message that she was going to Cocoa Beach to see her boyfriend's mother in the hospital there. (Dkt. 15, Wilson depo. at 42-43, Van Blarcom depo. at 69-72). Ms. Wilson immediately called Plaintiff back, and Plaintiff did not answer. (Dkt. 15, Wilson depo. at 43). Ms. Wilson then left a message saying that his mother was not part of her family and that she needed to be at work the next day because she was the only technician scheduled to work that Monday. (Dkt. 15, Wilson depo. at 43, Van Blarcom depo. at 73-74). Ms. Wilson warned her that if she did not report to work, she should not bother coming back to work at all. (Dkt. 15, Wilson depo. at 43, Van Blarcom depo. at 74).

The next day Plaintiff did not report to work until many hours after her shift was to begin. (Dkt. 15, Van Blarcom depo. at 76-77). Plaintiff fully expected to be terminated when she returned. (Dkt. 15, Van Blarcom depo. at 77-78). Wilson terminated Plaintiff for her repeated tardiness, her seeking medical advice from a veterinarian outside the employ of Defendant, and for absenteeism, including the failure to report to work on November 15, 2004. (Dkt. 15, Wilson depo. at 39-41, 48). Ms. Wilson testified that neither the fact that Plaintiff was dating a black man played any part in her decision to terminate Plaintiff, nor the fact that Plaintiff reported the incident to her regarding Dr.

Lipinski. (Dkt. 15, Wilson depo. at 50). Dr. Lipinski was not consulted before Plaintiff was terminated. (Dkt. 15, Wilson depo. at 51).

## Title VII Race-based Discrimination

Plaintiff must establish a prima facie case of discrimination before addressing the reasons for discrimination. A prima facie case includes a showing that (1) Plaintiff belongs to a protected class, (2) Plaintiff was the subject of adverse employment action, (3) Plaintiff's employer treated similarly situated employees who were not members of her class more favorably, and (4) Plaintiff was qualified for the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff has failed to establish the third and fourth prongs of a prima facie case sufficient to avoid summary judgment.

First, Plaintiff has not shown that there were any similarly situated persons—other employees who was engaged in a bi-racial relationship— who were treated any differently than she. See Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (requiring that quantity and quality of comparator's misconduct be nearly identical); Jones v. Gerwens, 874 F.2d 1534, 1536-40 (11th Cir. 1989). Although she has identified other employees who were also tardy and absent and has attached their separation agreements to the response, Plaintiff has failed to provide any evidence regarding the particular circumstances surrounding their terminations. This fact, coupled with no evidence that these employees were involved in bi-racial relationships, cause her claim to fail. To the extent she contends that Dr. Lipinski, a veterinarian, was treated more favorably than she, there is no record evidence to support this contention. There is no

evidence that a choice existed to terminate either Plaintiff or Dr. Lipinski based on what in Plaintiff's mind was an inability to work with Dr. Lipinski.

The evidence in the record of Plaintiff's tardiness and absenteeism also prevents her from establishing the fourth prong— qualified to perform the job. Because the record is devoid of evidence establishing the third and fourth prongs of a prima facie case, summary judgment must be granted. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (holding that to avoid summary judgment, plaintiff must present concrete evidence in the form of specific facts).

Even assuming Plaintiff could establish a prima facie case, she has failed to make a plausible showing that VCA's reasons for termination were pretextual. VCA's legitimate, non-retaliatory reasons for termination are supported by the record. Plaintiff even admits that she was substantially tardy and counseled accordingly, that she consulted non-VCA veterinarians for medical advice in violation of company policy, and that Ms. Wilson forewarned her that failure to show up for work on November 15, 2004, would result in termination. Plaintiff fully expected to be terminated on that date, and, in fact, came to work in the afternoon and gave her keys to Ms. Wilson, without having to be asked for them.

Placing Ms. Wilson's state of mind at issue, insofar as whether she had a race-based motive for Plaintiff's termination, lacks any support in the record. Ms. Wilson showed absolutely no discriminatory motive in her actions at work or outside of work. She even arranged to take Plaintiff and her boyfriend's two children, who were black, to

Busch Gardens for Halloween festivities. These actions tend to show that it is likely that Dr. Lipinski's comments offended Ms. Wilson as well as Plaintiff. Ms. Wilson counseled Dr. Lipinski, Dr. Lipinski apologized to Plaintiff, and no more comments were made regarding Plaintiff's romantic relationship. Having found that Plaintiff failed to establish a prima face case or place doubt into the record regarding VCA's legitimate, non-discriminatory reasons for termination, the Court grants summary judgment in favor of VCA on the Title VII discrimination claim.

### Retaliation

A prima facie case of retaliation must be proved by (1) showing Plaintiff engaged in statutorily protected activity, (2) showing a causal link between the protected activity and her termination, and (3) showing that VCA's legitimate reasons for termination were pretextual. See Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004), cert. denied, 126 S.Ct. 478 (2005). Plaintiff failed to establish the first prong— that she engaged in a protected activity. She complained to Ms. Wilson about a statement that a non-VCA veterinarian made to her, not a discriminatory practice of her employer, VCA. See Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997) (holding that remark made by co-worker must be attributable to employer as unlawful and must be directed at unlawful employment practice of employer not act of discrimination by private individual). Second, there is no causal link between her complaining to Ms. Wilson and her termination. Dr. Lipinski apologized to Plaintiff and made no other comments. Plaintiff's termination was not linked to the statement made by Dr. Lipinski. This Court

has already discussed VCA's reasons as legitimate, non-discriminatory reasons for termination. Accordingly, summary judgment must be entered in favor of Defendant on the retaliation claim.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (Dkt. 15) is **GRANTED**.

(2) The Clerk shall enter final summary judgment in favor of Defendant and against Plaintiff on all issues.

(3) The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on May 5, 2006.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record